IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 11-CR-300 (JSR) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD LIPSKY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF THE DEPARTMENT OF LABOR'S
RESPONSE OPPOSING PETITIONER'S REQUEST FOR RELIEF
FROM STATUTORY EMPLOYMENT DISABILITY**

**INTRODUCTION**

The United States Department of Labor respectfully submits this memorandum of law in

opposition to Petitioner Richard Lipsky's ("Lipsky" or "Petitioner") motion for an order granting

relief from the statutory employment disqualification imposed on him under section 504 of the

Labor-Management Reporting and Disclosure Act of 1959, as amended (LMRDA), 29 U.S.C. §

504, as a result of his 2012 felony conviction.  Petitioner is seeking an exemption from the

section 504 bar which will otherwise be in effect until February 25, 2026. Granting Lipsky's

motion would permit him to be employed in a capacity otherwise prohibited under section 504.

Petitioner's request for an order of exemption should be denied because Petitioner has not clearly

demonstrated sufficient rehabilitation to justify receiving an exemption under 504(a), and it

would be contrary to the purposes of the LMRDA for the Court to grant such an exemption.

## 1. STATEMENT OF FACTS

In 1981, Petitioner formed his own consulting firm, Richard Lipsky Associates, to

provide public policy and public relations consulting to those seeking to influence public policy

at the legislative level. *Report of Investigation (ROI), Ex. 1, Petitioner's Declaration at 3*. In

particular, the firm focused on the politics of environmental law, land use review, and the

protection and enhancement of neighborhood retailers. *Id*. While he spent time pleading his

clients' cases to various local and state officials as a lobbyist, he equally worked to mobilize

favorable public opinion on client issues through the media and other education methods:

publishing a blog, writing memos and talking points for others, drafting press releases, and

organizing press conferences and rallies. *Id.   ROI, Ex.1, Petitioner's Declaration at 3*.  During

the period of 1995 to February 1999, Petitioner also worked as a consultant for the United Food

and Commercial Workers Union (UFCW), Region 1 Council (Council).  He assisted the Council

and affiliated UFCW local unions in New York as an advisor and lobbyist on matters related to

UFCW's interests in representing grocery workers in the area and, in particular, relevant zoning

regulations.  *See* UFCW International President Marc Perrone's statement dated October 24,

2016.

On March 9, 2011, Lipsky was charged in a criminal complaint with offenses related to

his payment of disguised compensation to State Senator Carl Kruger in exchange for Kruger

supporting legislation favorable to Lipsky's clients.  *ROI, Ex. 2*. The Petitioner engaged in

criminal conduct that began in 2007 and continued until March 2011. *Id.* According to Lipsky,

Kruger approached him in the fall of 2007 and requested that Lipsky retain Olympian Strategic

Management Corporation, ("Olympian"), a company operated by Michael and Gerard Turano, Kruger's stepsons, to work with Lipsky on a project in Brooklyn that Kruger had opposed. *ROI, Ex 1, Attachment H.* Over the course of a year, Olympian and the Turanos did little in the way of documented work, but were paid by Lipsky nonetheless.  In the fall of 2008, Kruger suggested to Lipsky that it would be to Lipsky's benefit to assist certain individuals and entities with lobbying and consulting services. *Id.*  Kruger directly referred four such clients to Lipsky and helped Lipsky secure two others.  Once Lipsky was retained, Kruger solicited and accepted bribes in the form of "referral fee" payments from Lipsky made to an Olympian bank account.  Thereafter, when opportunities arose, Kruger took official actions in favor of some of the issues which Lipsky had been paid to lobby.  These official actions included sponsoring and supporting legislation and directing state monies for the benefit of a local not-for-profit organization that employed Lipsky's wife on a part-time basis. *Id.*  Kruger received a stream of bribes, including approximately $120,000 - $200,000 between November 2007 and the end of June 2010, from Lipsky.  *Petitioner's Exhibit H, 5K1.1 Letter*.  *Id.* The complaint against Lipsky contained a summary of information revealed through the investigation which included that:

> Agents conducted a search warrant of Lipsky's residence and seized
> $102,000 in cash from a safe and $4,000 cash contained in the pocket of a
> suit that belonged to Lipsky.  (Exh.6).

Two superseding indictments were later filed against Lipsky for charges of conspiracy to commit mail fraud, wire fraud, bribery and travel act conspiracy.  On January 4, 2012, Lipsky pled guilty to violations of Travel Act Bribery and Conspiracy (18 U.S.C. § 1952(a)(3) and 18 U.S.C. § 371).  *ROI,* Ex. *2*).  He negotiated a cooperation agreement that included an agreement to plead guilty to conspiracy and mail fraud in connection with the scheme. *Id.* The United States Attorney's office requested a downward departure from the sentencing guidelines because of

Lipsky's substantial assistance to the prosecution of other defendants. *Id.* On September 28, 2012, this Court sentenced Lipsky to three months imprisonment at a minimum security camp. *Id.* He was released on February 25, 2013.   He did not have a period of home confinement, restitution, or forfeiture.  He completed two years of supervised release.  *ROI, Ex. 2-3.*

Following his release from prison, Lipsky continued as a lobbyist, assisting, on a pro bono basis, the Bodega Association on its "Healthy Bodega" initiative that, under a grant from the Centers for Disease Control, is working to unite store owners and community members to promote the sale of healthier food options *ROI, Ex. 1,Petitioner's Declaration at 4*.   Petitioner is currently working for Gotham Government Relations as a paid consultant, a position he has held for about two to three years.  As a consultant for Gotham, Petitioner does not engage in direct lobbying, but does engage in strategic planning, consulting, and writing position papers for Gotham on a number of issues. *ROI, Ex. 11*.

In 2013, the National Association of Criminal Defense Lawyers (NACDL) engaged the Petitioner as a consultant to assist the Foundation for Criminal Justice (FCJ) in cultivating support for criminal justice reform initiatives, and to work with the NACDL in expanding its outreach to various groups that had not previously displayed an interest in criminal justice reform.  Petitioner served as a paid consultant for NACDL during the period October 2013 through 2015.*ROI, Ex. 1,  Petitioner's Declaration, Ex E.*  In this capacity, he worked on the Restoration Rights Campaign, the goal of which is to reduce barriers to re-entry for employment of the formerly incarcerated and more generally address issues relating to criminal justice reform, including mandatory minimum sentencing.  *Id.*

As an extension of his work with FCJ, Petitioner has sought work as a consultant with labor organizations on criminal justice issues.  He has approached his former client, the United

Food and Commercial Workers (UFCW), which has expressed interest in employing him to

"serve as a consultant and to develop policy positions for the UFCW, draft papers and articles in

support of those positions, and work to forge alliances that would benefit the mission of restoring

the rights of incarcerated individuals." *Id.*  As is explained below, employment of this sort would

require that he be granted an exemption from the 13-year statutory bar of employment with a

labor organization that applies to individuals convicted of certain crimes.

## II.   STATUTORY FRAMEWORK

In enacting the LMRDA, Congress declared that its purpose, in part, was to ensure that

"labor organizations, employers, and their officials adhere to the highest standards of

responsibility and ethical conduct in administering the affairs of their organizations, particularly

as they affect labor-management relations .... [and] to eliminate or prevent improper practices

on  the part of labor organizations, employers, labor relations consultants, and their officers and

representatives …." 29 U.S.C. § 401(a) and (c).  The statute was a reaction to a "number of

instances of breach of trust, corruption, disregard of the rights of individual employees, and

other  failures to observe high standards of responsibility and ethical conduct …." 29 U.S.C.

§ 401(b).  Section 504 of the LMRDA attempts to further this purpose by prohibiting anyone

convicted of certain enumerated crimes, including bribery, from serving as a consultant, or

adviser to any labor organization for thirteen years following the date of the  individual's

conviction or the date the individual completes his or her imprisonment, whichever is  later.  29

U.S.C. § 504(a).  The employment disability is invoked by conviction of an enumerated crime.

*Id*.

In 1984, Congress amended section 504 as part of the Comprehensive Crime Control

Act, Pub. L. No. 98-473, 98 Stat. 1837 (1984), which  included the Labor Racketeering

Amendments, 98 Stat. 2131 (1984).  As part of these  amendments, the employment disabilities

set forth in section 504 were revised to: (1) broaden the  list of disqualifying crimes; (2) expand

the disability period from five to thirteen years; and (3) expand the list of positions to which

the disqualification applies.  The penalty for a willful violation of the disqualification was also

increased to a felony punishable by imprisonment for up to five years. *Id.* By increasing the

duration of the disqualification period from five to thirteen  years, Congress indicated that the

length of that period is a critical component of the statutory  scheme to rid labor unions of

corruption.  *See Harmon v. Teamsters, Local 371*, 832 F.2d 976, 979  (7th Cir. 1987) (In

passing the LMRDA, Congress determined that persons who commit serious  crimes should not

be permitted to hold union office until a significant period of time had elapsed  after their

punishment); *see generally, Local 186, Int'l Brotherhood of Teamsters v. Brock*, 812  F.2d

1235, 1236 n.1 (9th Cir. 1987) (discussion of the 1984 amendments).

A convicted individual who seeks relief from the section 504 employment disability

may apply for relief by one of three methods. 29 U.S.C. § 504(a).   First, relief from the

disqualification may be obtained at  any time where the disqualified individual obtains a full

restoration of citizenship rights that had  been lost as a result of his or her conviction, either by

pardon or the equivalent procedure, in the  jurisdiction of conviction.  29 U.S.C. § 504(a)(A).

Second, a disqualified individual may petition the sentencing court in which the conviction

occurred to reduce the statutory length of disability to a shorter period, but not less than three

years following the date of conviction or the end of their imprisonment, whichever is later.  29

U.S.C. § 504(a)(B).  Third, a disqualified individual may seek an "exemption" from the

disability to serve in a particular prohibited position at any time prior to  the end of the

disability period. *Id.*  Lipsky seeks an exemption from section 504"s employment disability.

Without the grant of an exemption, his employment disability will not expire until September 24, 2026.

### III. STANDARDS FOR RELIEF FROM DISABILITY

A district court may grant a Petitioner's exemption from the employment disability in section 504(a) to serve in a prohibited position only if it determines, pursuant to the applicable sentencing guidelines and policy statements, that the Petitioner's service in a covered position "would not be contrary to the purposes" of the LMRDA.  29 U.S.C. § 504(a)(5).  That purpose is to ensure that labor and management officials "adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organizations."  *Carollo v. Herman*, 84  F. Supp.2d  374,  376  (E.D.N.Y.  2000)  (quoting  29  U.S.C.  §  401(a));  *see also United States v. Cullison*, 422 F.Supp.2d 65, 67 (D.D.C. 2006) (quoting 29 U.S.C. § 401(b)).  The exclusion of individuals convicted of certain crimes from union office or union employment was  a major part of the legislative scheme to purge unions of corrupt influences.  *Nass v. Local 348,  Warehouse Prod., Sales and Services Emp. Union*, 503 F.Supp. 217, 220 (E.D.N.Y. 1980), *aff'd*,  657 F.2d 264 (2d Cir. 1981).

United States Sentencing Guideline Section 5J1.1 applies to a person convicted of any crime enumerated in section 504(a) of the LMRDA.  *See* U.S.S.G. § 5J1.1 (1998).  The applicable Sentencing Guideline provides, in relevant part:

> [R]elief shall not be given to aid rehabilitation, but may be granted only following a *clear demonstration* by the convicted person that he or she has been rehabilitated since commission of the disqualifying crime and can therefore be trusted not to endanger the organization in the position for which he or she seeks relief from disability.

U.S.S.G. § 5J1.1 (1998).  *See In re Belpedio*, 753 F.Supp. 239 (N.D. Ill. 1990)  (exemption relief

under U.S.S.G. § 5J1.1 and 29 U.S.C. § 504 denied to convicted former union official who

failed to clearly demonstrate how he had been rehabilitated since the commission of the

disqualifying crime); *Beardsley v. United States Dep't of Labor*, 807 F. Supp. 1192, 1195 (W.D.

Pa. 1992) (Petitioner's evidence falls short of a "clear demonstration" of rehabilitation as it is

too soon to determine whether Petitioner's rehabilitation has been successful).  It is mandatory

that evidence of rehabilitation be offered, and that the court determine that rehabilitation has in

fact occurred.  Prior to declaring an individual exempt from the section 504 prohibition, the

district court must hold a hearing and provide notice to the Secretary of Labor and to state and

federal prosecutors in the relevant geographical area.  29 U.S.C. § 504(a)(5);  *Carollo*, 84 F.

Supp.2d at 376 (citing 29 U.S.C. § 504(a)).

In assessing the nature and extent of the evidence required to make a "clear

demonstration of rehabilitation" under section 504(a), both the Department of Labor and the

Courts have been guided by the standards developed by the United States Parole Commission,

which originally had jurisdiction to decide petitions for exemption or reduction under section

504.  *See* 28 C.F.R. §§ 4.3, 4.4, 4.5; U.S.S.G. § 5J1.1; *Carollo*, 84 F. Supp.2d at 377, n.3

(Parole Commission's regulations instructive in determining procedures for relief under

section 504).  In particular, the Department's investigation, and subsequently the Courts'

assessments of these petitions for section 504 exemptions, focus on three factors: (1) the

character and gravity of the offense; (2) the nature of the position sought; and (3) the extent

that Petitioner is sufficiently rehabilitated so as to adhere to the highest standards of

responsibility and ethical conduct sought to be fostered by the LMRDA. *Id.*; *See Cullison*, 422

F.Supp.2d at 72-75 (court applies factors and concludes that granting Petitioner's relief would

be inappropriate in light of the purposes and policies  underlying section 504(a) and the

character and gravity of Petitioner's crime).

## IV.    ARGUMENT

**The Petitioner has failed to meet his burden of clearly demonstrating that he has been rehabilitated since his conviction, that he is trustworthy to be affiliated with the United Food and Commercial Workers (UFCW) and labor organizations in which he seeks employment and that relief would not be contrary to the purposes of the LMRDA.**

A.    Character and Gravity of the Offense

The character and gravity of the offense committed indicates the type and degree of

rehabilitation that must be shown for a grant of exemption.  It is also indicative of whether the

Petitioner understands the duties and responsibilities of one who is entrusted with protecting

the interests of others and the ethical standards required of a person who occupies a position of

trust. *See Carollo v. Herman*, 84. Supp. 2d at 377 (Petitioner bears burden of persuasion to

clearly demonstrate rehabilitation and trustworthiness to hold position sought).

Section 504 covers a wide array of offenses, not all of which relate to the convicted

person's union activity. *Cullison*, 422 F.Supp.2d at 68 ("it is worthwhile to note that [section

504's] employment disqualification may apply to someone who has been convicted of a crime

that has absolutely nothing to do with labor organizations or is not a federal crime."). Even in

circumstances where the offense was unrelated to union service, or occurred many years before

the individual considered union office or employment, convicted persons incur the full thirteen-

year disqualification period. *See, e.g.*, *Belpedio*, 753 F.Supp. at 240 (504 disqualification applied

to Petitioner convicted of aggravated battery as a result of an altercation during a football game).

Congress did not intend to limit the directive of section 504(a) to crimes which occur in

circumstances related to union activity. *Beardsley*, 807 F.Supp at 1193-1195 (504

disqualification applied when Petitioner pled guilty to cocaine possession).

Lipsky's conviction warrants heightened concern because it involves bribery of a public

official, the type of corruption that the LMRDA was enacted to sanction. *See* 29 U.S.C. § 401(b)

(LMRDA intended to combat "breach of trust, corruption, disregard of the rights of individual

employees, and other failures to observe the high standards of responsibility and ethical

conduct"). Petitioner was charged with offenses related to his payment of disguised

compensation to New York State Senator Carl Kruger in exchange for Kruger supporting

legislation favorable to Lipsky's clients. *ROI. Ex. 2* Lipsky negotiated a cooperation agreement

that included an agreement to plead guilty to conspiracy and mail fraud in connection with the

scheme. *Id.* The Petitioner does not dispute that the crime of bribery falls expressly within the

enumerated offenses under section 504(a).

Further, the issue of bribery in the organized labor is far from an academic concern.  For

example, in 2012, three leaders in the union Petitioner seeks to work with were convicted of

extortion, using their leadership positions to collect unlawful payments from employers over a 35

year period.

https://www.justice.gov/archive/usao/nys/pressreleases/September12/FaziosSentencingsPR.html;

see also, Office of Labor Management Standards Annual Report, FY-2015 at 6,

https://www.dol.gov/olms/regs/compliance/OLMS_Annual_Reports.htm (Steward bribery

conviction).

The character and gravity of this offense weighs against granting his requested

exemption, because he engaged in an extensive conspiracy over a long period of time that

consisted of exactly the type of corruption that Congress sought to eradicate.  Consequently,

absent extremely compelling circumstances, it would be inconsistent with the statutory purpose

for an individual convicted of a crime of this type to have the bar lifted only three and half years

after his prison release date.  As noted above, Section 504 sets a floor of three years for a

sentencing court to reduce the 13-year bar.  With a crime as serious as Petitioner's, it would not

be appropriate, and would undermine the deterrent effect of the statutory bar, to grant the

equivalent of the maximum relief the statute allows.

   B.   Nature of Position Sought

   In determining the degree to which Lipsky must prove his rehabilitation, the importance of

the position sought, the requirements of that position, and its potential for influence upon others,

must be examined.  No effective assessment of whether Lipsky's service would be contrary to the

purposes of the LMRDA can be made without knowing the positon that he seeks to hold.

   Petitioner is seeking an exemption from the bar to serve as a consultant to the UFCW and

other unions on the Restoration Rights Campaign. *ROI, Ex. 1. Petitioner's Declaration at 6.*

The goal of the campaign is to reduce barriers to re-entry for employment of the formerly

incarcerated.  The campaign also deals with justice reform including mandatory minimum

sentences.

   UFCW President Marc Perrone has stated that, if Lipsky is successful in obtaining an

exemption under the LMRDA, Petitioner Lipsky "would not be meeting with employers or

politicians, negotiating contracts, representing members, handling union or benefit fund money,

or steering PAC funds." *ROI, Ex. 17.* "His role . . . would be to serve as a consultant and to

develop policy positions for the UFCW, draft papers and articles in support of those positions,

and work to forge alliances that would benefit the mission of restoring the rights of incarcerated

individuals." *Id.*  Petitioner, however, stated that if an exemption is granted he will interact with

unionized employers on the project and that he is likely to be paid by unions. *ROI, Ex.3.* Thus, there is some uncertainty as to what his role at the UFCW will be as a policy advisor and advocate on Restoration of Rights issues. Further, Petitioner has requested an exemption that includes the right to perform similar work for other unions. *ROI, Ex. 1, Petitioner's Declaration at 6-8.* This aspect of the request adds to the uncertainty of exactly what his role would be.

If the Court grants Lipsky's petition for an exemption, he will be restored to a position where he is performing a portion of his work as a policy advisor and advocate, a position of prominence within the union that requires a high degree of character and responsibility. He will be working with members and employers to build a coalition of unions to open jobs to individuals with criminal records. *Id.* The temptations of deal-making and the risk of bribery weigh against this being an appropriate position for an individual who has demonstrated a propensity to engage in criminal schemes and financial crimes.

Finally, in his petition, Lipsky states that the role he seeks will not involve lobbying and he will at no time "interface with legislative representatives." *ROI, Ex. 1 at 13.* Petition at 13. Certainly, this restriction would be necessary in the event Lipsky returned to work as an advocate for labor organizations. Should the Court be inclined to grant the petition, this limitation should be expressly stated.

C. Rehabilitation

A Petitioner seeking an exemption from the section 504 bar has a heavy burden of clearly demonstrating that he is rehabilitated and now trustworthy such that the Petitioner's service in the otherwise prohibited position would not endanger the organization or otherwise be contrary to the purposes of the LMRDA. *See Henry v. Chao*, 2007 WL 1040856, *3 (WD. Tex. April 4, 2007) (Petitioner has burden of clearly showing that he is rehabilitated); *Carollo*, 84 F.Supp.2d

at 377 (applicant for relief bears the burden of persuasion to clearly demonstrate rehabilitation

and trustworthiness to hold position for which relief from the disability is sought in accordance

with U.S.S.G. § 5J1.1).  The Petitioner must prove that, despite his disqualifying conviction, he

has conducted himself in such a manner as to indicate he is in fact a person of high standards of

responsibility and ethical conduct who can be entrusted to be employed with a labor

organization.  *See In re Belpedio*, 753 F.Supp. at 239; *Beardsley*, 807 F.Supp. at 1194.

Both Petitioner and his counsel argue that his criminal conduct was "aberrational" and

that his post-arrest life has been an attempt to remake the good name that he had prior to his

involvement in Kruger's scheme. *ROI Ex. 1.* The Department is of the view that serious

misconduct lasting over a substantial period of time should not be considered aberrational.   In

this regard, from at least 2007 until 2011, Petitioner paid disguised compensation to New York

State Senator Carl Kruger in exchange for Kruger acting favorably to clients who were

advocating particular legislation.  The Department considers that behavior, which continued for

such a substantial period of time, not to be an aberration.  During this substantial time period,

Kruger received from Lipsky a stream of bribes, including approximately $120,000 - $200,000

between November 2007 and the end of June 2010.  *ROI,Petitioner's Exhibit H, 5K1.1 Letter.*

During sentencing, the Court recognized that official corruption has to be ranked among

the most serious of all crimes and that if you engage in a form of public corruption, you must

understand that you must go to jail. *See*, Court Sentencing Transcript at 20. The Court

acknowledged that cooperation is often needed to point the government toward the existence of

insidious situations that undermine our democratic principles. *Id.*  However, Petitioner's conduct

and subsequent plea indicates that Petitioner breached the standard of prudent judgement.  He

failed to observe the highest standards of responsibility and ethical conduct.

The Court also recognized that, in other aspects of the Petitioner's life, he was an "upright citizen doing good work." This factor and his cooperation with the government were factors that the court took into account in sentencing him to only three months of imprisonment.  While these factors were certainly appropriate in determining Lipsky's sentence, it is not apparent that they weigh as heavily in a determination of whether he has been rehabilitated since the commission of his crime, the issue that must be determined in this proceeding.

With regard to his rehabilitation, prior to his arrest, Lipsky was recognized for his efforts as a lobbyist.  After his release from prison in early 2013, he continued with some of that same work. For example, he returned to assisting, on a pro bono basis, the Bodega Association on its "Healthy Bodega" initiative that is working to unite store owners and community members to promote the sale of healthier food options.  Declaration at 6.  His positive references include Mr. Ramon Murphy, President of the Bodega Association, Norman Reimer, Executive Director of the National Association of Criminal Defense Lawyers and the Foundation for Criminal Justice, Robert LoScalzo, owner of LoScalzo, a producer/consultant in the fields of video, photography and informational writing. *ROI, Exhs. 11,12 14.* His current employer, David Schwartz, owner of Gotham Government Relations, reported to the Court that Lipsky has been a model citizen since the termination of his incarceration and has been a productive member of society. *ROI, Ex 12.* Schwartz echoes the views of both Lipsky's counsel and Lipsky himself that his conduct in the underlying criminal case was aberrational and that it has been proven by his lawful and honorable behavior since his arrest. Lipsky contends that he has positive contributions to make on behalf of others, despite his limited future work life at 69.  However, it is not apparent that his future work life today is significantly more limited than what it was 8 years ago when he began his almost 4-year course of criminal conduct or 5 years ago in 2011 when he was arrested.

During the course of the investigation, Petitioner's probation officer expressed the opinion that he was rehabilitated. *ROI, Exh. 9.* She stated that he had showed remorse for his actions, followed all directions, and did not give her any problems. *Id.* While the Department does not disagree with the facts relied on by the probation officer, it considers the level of rehabilitation required by section 504 to involve more than remorse, satisfying the petitioner's probation obligations, and not getting into additional problematic behavior.

The Department acknowledges that Lipsky has conducted himself well during the time since his incarceration, but it nevertheless concludes that, given the seriousness of his crime and its relationship to the purposes of the LMRDA, insufficient time has passed to demonstrate that he has been sufficiently rehabilitated to assure that he would not engage in similar criminal misconduct if faced with other pressures of life. *See*, *e.g.*, *Beardsley*, 807 F. Supp. at 1194-1195 (exempting relief under section 504 denied to a convicted individual who had failed to clearly demonstrate sufficient rehabilitation and trustworthiness to be a union business agent, despite evidence of his positive efforts during the 15-month period since the offense). In this regard, weighing heavily against a determination that Petitioner has clearly demonstrated rehabilitation is the fact that Lipsky has filed his petition three years and nine months from the date of his release from prison. By increasing the duration of the disqualification period from five to thirteen years, Congress indicated that the length of that period is a critical component of the statutory scheme to rid labor unions of corruption. *See Harmon v. Teamsters, Local 371*, 832 F.2d at 979 (7th Cir. 1987) (In passing the LMRDA, Congress determined that persons who commit serious crimes should not be permitted to hold union office until a significant period of time had elapsed after their punishment); *see generally, Local 186, Int'l Brotherhood of Teamsters v. Brock*, 812 F.2d 1235, 1236 n.1 (9th Cir. 1987) (discussion of the 1984 amendments). Lipsky's evidence

falls short of a "clear demonstration" of rehabilitation as it is too soon to determine whether

Petitioner's rehabilitation has been successful.


## V.   CONCLUSION

For the reasons articulated herein, the United States Department of Labor respectfully

opposes the Petition of Richard Lipsky for a section 504 exemption.  Petitioner has failed to

clearly demonstrate that he has been rehabilitated and therefore can be trusted not to endanger

the organizations in the position he seeks.  Granting the exemption from the bar would be

contrary to the purposes of the LMRDA.  Therefore, the petition for exemption should be denied.

If at some point in the future, Petitioner is able to show that he has adhered to the highest

standards of ethical conduct and has led his life in an exemplary fashion, he can again petition

for relief at that time.  Otherwise, his relief from the employment disability will expire

automatically on February 25, 2026.


Respectfully submitted

U. S. Department of Labor


____ /s/_____
BEVERLY DANKOWITZ
Associate Solicitor
Civil Rights and Labor-Management
Division


_____/s/_____
CLINTON  WOLCOTT
Counsel for Labor Management
Programs


_____/s/_____
BRENDA J. STOVALL
Senior Attorney